IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SWANITA M. TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-2043 |
| | § | |
| KELLOGG BROWN & ROOT, INC., | § | |
| SERVICE EMPLOYEES | § | |
| INTERNATIONAL INC., | § | |
| and JUAN ELIAS, | § | |
| | § | |
| Defendants, | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendants Kellogg Brown & Root, Inc., ("KBR")[2] and Service Employees International, Inc.'s ("SEII")(collectively "Defendant Employers")[3] Motion to Partially Dismiss Plaintiff's Original Complaint (Doc. 20).[4]  The court has considered the motion, the response, all other relevant briefs and exhibits, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Defendant Employers' motion be **GRANTED**.

## I.  Case Background

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Docket Entry No. 34.

[2]     According to Defendant KBR, the correct party is Kellogg Brown & Root LLC.

[3]     The court refers to the two employer defendants collectively unless the complaint or other evidence specifically identifies one or the other employer.

[4]     Also pending is Plaintiff's Motion for Default Judgment Against Juan Elias and Request for a Hearing on Damages (Doc. 25).  The court will address that motion in a separate order.

In this action, Plaintiff alleges employment discrimination and state law torts against her former employers and assault and related state law torts against a former coworker.

## A.   <u>Factual Background</u>

Defendant KBR employs tens of thousands of people to work in the Kuwait-Iraq region under services contracts with the United States.[5]   Defendant SEII is a subsidiary of Defendant KBR.[6] Plaintiff began working for Defendant SEII in late November 2008 as a logistics warehouseman at the Jalalabad Base.[7]   Her employment was part of a support services contract between Defendant KBR and the United States.[8]   She was later transferred to Kandahar Base in Afghanistan.[9]

In January 2009, Plaintiff reported her supervisor, Kevin Epke ("Epke"), to Defendant KBR's Human Resources Department at the Kandahar Base, alleging that he discriminated against foreign employees and minorities and that he forced employees to engage in illegal activities.[10]   Among other complaints, she also reported

---

[5]     Doc. 1, Pl.'s Compl., p. 4; <u>see also</u> Doc. 56-1, Ex. 1-A to Def. Employers' Partial Mot. to Dismiss, Award/Contract.

[6]     Doc. 1, Pl.'s Comp., p. 4.

[7]     <u>Id.</u>; <u>see also</u> Doc. 56-2, Ex. 1-B to Def. Employers' Partial Mot. to Dismiss, Employment Agreement.

[8]     <u>See</u> Doc. 56, Ex. 1 to Def. Employers' Partial Mot. to Dismiss, Decl. of Janet Curfman, ¶ 4; Doc. 56-2, Ex. 1-B to Def. Employers' Partial Mot. to Dismiss, Employment Agreement.

[9]     Doc. 1, Pl.'s Compl., p. 4.

[10]     <u>Id.</u>

that he falsified documents, ignored safety violations in the workplace, and falsely accused her of stealing potato chips.[11] Epke responded by attempting to increase Plaintiff's workload, and Plaintiff requested a transfer.[12]

In March 2009, Plaintiff received a transfer to Bagram Airfield in Afghanistan where she began working in laundry services.[13] When one of Plaintiff's female coworkers reported that an Afghan local in Defendant KBR's employment had physically and sexually assaulted her, Plaintiff provided a written statement in support of the coworker's account.[14] As a result Plaintiff became a target of retaliation by the Afghan locals.[15] Rather than provide her assistance against the locals, Plaintiff's new supervisor harassed Plaintiff and other female employees.[16]

Plaintiff complained about the hostile work environment to the Human Resources Department beginning on June 3, 2009.[17] Plaintiff also reported the Afghan locals for not working.[18] Other employees lodged complaints against Plaintiff for creating a hostile work

---

[11]   Id.

[12]   Id.

[13]   Id.

[14]   Id. at p. 5.

[15]   Id.

[16]   Id.

[17]   Id.

[18]   Id.

environment.[19]  Although no action was taken in response to her complaints, Defendant KBR disciplined Plaintiff on June 9, 2009.[20] Plaintiff then filed complaints regarding discrimination, hostile work environment, retaliation, and sexual harassment with Defendant KBR's Code of Business Department and with Defendant KBR's chief executive officer.[21]

In an apparently unrelated incident,[22] Defendant Juan Elias ("Elias") sexually assaulted Plaintiff on June 25, 2009, while Plaintiff was standing alone in a break room.[23]  Plaintiff suffered injuries as a result, including severe pain and swelling.[24] Plaintiff immediately reported the assault to representatives of Defendant KBR's Employee Assistance Program ("EAP") and Employee Relations ("ER"), who instructed her to report to the medical center for treatment.[25]  At a meeting with EAP and ER representatives held week later, Plaintiff provided details of the assault, stated that she was concerned for her safety, and reported

---

[19]    Id.

[20]    Id.

[21]    Id. at pp. 5-6.

[22]    In her pleading, Plaintiff did not allege that the Elias' assault was a factor in her Title VII complaint.  See id. at p. 7.

[23]    Id. at p. 6.

[24]    Id.; see also Doc. 49-3, Ex. C to Pl.'s Resp., Certification of Employee Having Met with EAP/Stress Day Form.

[25]    Doc. 1, Pl.'s Compl., p. 6; see also; Doc. 49-3, Ex. C to Pl.'s Resp., Certification of Employee Having Met with EAP/Stress Day Form.

that she had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[26]

Plaintiff received a termination notice on July 20, 2009.[27] Nearly two years later, Defendant Employers' insurance carrier filed a Notice of Controversion of Right to Compensation denying Plaintiff's right to benefits based on several arguments.[28]

## B.   **Procedural Background**

Plaintiff filed suit on June 10, 2010.[29]  Against Defendant Employers only, she alleged employment discrimination, retaliation, and sexual harassment under the Civil Rights Act of 1964[30] ("Title VII") for the actions of her supervisors.[31]   Against all of the defendants, based on Defendant Elias's assault, Plaintiff alleged civil assault and battery, sexual assault, and intentional infliction of emotional distress.[32]   Plaintiff also alleged negligence and negligent hiring, supervision, training, and retaining against Defendant Employers but has since abandoned those

---

[26]   Id.

[27]   Id.

[28]   See Doc. 49-1, Ex. A to Pl.'s Resp., Notice of Controversion of Right to Compensation.

[29]   See Doc. 1, Pl.'s Compl.

[30]   42 U.S.C. §§ 2000e-2000e-17.

[31]   See Doc. 1, Pl.'s Compl., p. 7.

[32]   See id. at pp. 8, 9-10.

claims.[33]  Plaintiff pled agency, joint venture, joint enterprise, and direct corporate liability as a separate cause of action but since has acknowledged that those concepts are merely theories of liability.[34]

Defendant Employers answered the complaint after receiving an extension of time.[35]  The court held a scheduling conference on October 29, 2010, at which time a discussion ensued concerning the effect of the Defense Base Act[36] ("DBA") on Plaintiff's claims.[37] After hearing the arguments of the parties, the court entered a scheduling order directing Defendant Employers to file a motion to dismiss based on the DBA by the end of the year and allowing Plaintiff an opportunity to conduct limited jurisdictional discovery on the issue prior to filing a response.[38]

Defendant Employers timely filed a motion to dismiss but, despite the court's ruling, did not limit their arguments to the

---

[33]    See id. at pp. 7, 9; Doc. 49, Pl.'s Resp. to Defs.' Partial Mot. to Dismiss, p. 17 (conceding that these claims are banned by the Texas Commission on Human Rights Act).

[34]    See Doc. 1, Pl.'s Compl., p. 9; Doc. 49, Pl.'s Resp. to Defs.' Partial Mot. to Dismiss, p. 21.

[35]    See Doc. 6, Def. Employers' Mot. for Extension of Time to Respond to Pl.'s Compl.; Doc. 7, Order dated July 8, 2010; Doc. 8, Answer.

[36]    42 U.S.C. §§ 1651-1655.

[37]    See Doc. 15, Min. Entry Order dated Oct. 29, 2010; Doc. 43, Tr. of Hr'g on Oct. 29, 2010.

[38]    See Doc. 16, Scheduling Order.

effect of the DBA on Plaintiff's claims.[39]  Rather, they argued additional bases for the dismissal of Plaintiff's tort claims.[40] Defendant Employers did not address Plaintiff's Title VII claims.[41] At a discovery hearing in March concerning the scope of jurisdictional discovery, the court stated that it would consider whether the Title VII question in a subsequent round of briefing.[42]

In the meantime, Plaintiff effected service on Defendant Elias, who failed to answer the complaint.[43]  Plaintiff requested and the court granted the entry of default.[44]  Plaintiff then filed a Motion for Default Judgment, which remains pending.[45]

The limited jurisdictional discovery has closed and the briefing on Defendant Employers' motion is now complete. Consistent with the arguments in Defendant Employers' motion and in light of the rulings of the court and Plaintiff's concessions, the court now considers Defendant Employers' motion to dismiss Plaintiff's claims of civil assault and battery, sexual assault, and IIED.

---

[39]    See Doc. 20, Def. Employers' Partial Mot. to Dismiss.

[40]    See id. at pp. 18-23.

[41]    See, generally, Doc. 20, Def. Employers' Partial Mot. to Dismiss.

[42]    Doc. 41, Tr. of Hr'g on Mar. 9, 2011.

[43]    See Doc. 22, Return of Service; Doc. 23, Pl.'s Req. for Entry of Default.

[44]    See Doc. 23, Pl.'s Req. for Entry of Default; Doc. 24, Order dated Jan. 14, 2011.

[45]    See Doc. 25.

## II.  Applicable Legal Standard

The first point of contention between the parties is whether the court should apply Federal Rule of Civil Procedure ("Rule") 12(b)(1), as suggested by Defendant Employers, or 12(b)(6), as suggested by Plaintiff.  A third option is to convert the motion into a Rule 56 summary judgment motion, the possibility of which is contemplated by Rule 12(b)(6).  As posited by Defendant Employers, their contention is that the court does not have the authority to hear Plaintiff's tort claims because they fit within the exclusive coverage of the DBA.  For the following reasons, the court finds that the issue is one of subject matter jurisdiction, which is properly challenged under Rule 12(b)(1), not Rule 12(b)(6).

The court's decision is anchored by the mandate that federal courts are courts of limited jurisdiction and have the authority to adjudicate claims only when that authority is conferred by the United States Constitution and federal statute.  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994); <u>Stockman v. Fed. Election Comm'n</u>, 138 F.3d 144, 151 (5th Cir. 1998).  The party asserting jurisdiction bears the burden of overcoming the presumption that the cause falls outside the court's limited jurisdiction.  <u>Kokkonen</u>, 511 U.S. at 377; <u>Vantage Trailers, Inc. v. Beall Corp.</u>, 567 F.3d 745, 748 (5th Cir. 2009)(citing <u>New Orleans & Gulf Coast Ry. Co. v. Barrois</u>, 533 F.3d 321, 327 (5th Cir. 2008)).

In her complaint, Plaintiff cited 28 U.S.C. § 1332, a statute

8

that confers jurisdiction over disputes between citizens of different states[46] if the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1); <u>see also</u> U.S. Const. art. III, § 2; <u>Caterpillar Inc. v. Lewis</u>, 519 F.3d 61, 67-68 (1996).  Defendant Employers counter with the DBA, a federal statute that they argue preempts Plaintiff's state law tort claims.

In ruling on the availability of federal question jurisdiction to review an asserted federal common law right, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") noted that jurisdiction is unavailable for claims when "Congress has created a specific, statutorily-defined scheme that clearly supplants the general jurisdictional statute." <u>Ceres Gulf v. Cooper</u>, 957 F.2d 1199, 1208 (5th Cir. 1992)(citing <u>Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.</u>, 379 U.S. 411, 420 (1965)); <u>see also</u> <u>Watson v. Massman Constr. Co.</u>, 850 F.2d 219, 224 & n.27 (5th Cir. 1988)(finding that the court could not decide whether claimant was covered by the Longshore and Harbor Workers'

---

[46]     Plaintiff's complaint states that Defendant KBR is headquartered in Houston, and the return of service for Defendant Elias indicates that he was served in Houston.  <u>See</u> Doc. 1, Pl.'s Compl., p. 3; Doc. 19, Proof of Service. As Plaintiff represented that she is also a resident of Houston, diversity jurisdiction is not available.  <u>See</u> 28 U.S.C. § 1332(a)(1) and (c)(1); Doc. 1, Pl.'s Compl., p. 2.  Plaintiff's Title VII claim is subject to the court's federal question jurisdiction.  <u>See</u> 28 U.S.C. § 1331.  Supplemental jurisdiction pursuant to 28 U.S.C. 1367 does not appear to be available for her assault-related claims because, as pled, they arguably are not part of the same case or controversy as her Title VII claims.  <u>See</u> 28 U.S.C. § 1367(a).  Because the parties have not briefed this issue and because the effect of the court's ruling herein is the same, the court opts not to pursue the line of analysis.

Compensation Act[47] ("Longshore Act") because the claimant had not complied with administrative process delineated in the Longshore Act); <u>Porter v. Kessner</u>, No. Civ. A. 00-1537, 2000 WL 1473592, at *4 (E.D. La. Jan. 2, 2000)(unpublished)(finding that the court lacked jurisdiction to review a Benefits Review Board ("BRB") decision under the Longshore Act because the statute's procedural framework granted review authority only to the court of appeals).

In enacting the DBA, Congress created a specific, statutorily-defined scheme.  For all claims that fall under the DBA, that statute is the exclusive avenue for recovery.[48]  42 U.S.C. § 1651(c).[49]  The only opportunity to file in district court on DBA claims follows an administrative adjudication.  <u>See</u> 42 U.S.C. § 1653(b) (allowing suits in federal court upon an employer's default or nonpayment of DBA compensation and for review of an adverse Benefits Review Board order).  Thus, if the DBA applies to the

---

[47]    33 U.S.C. §§ 901-950.

[48]    The DBA does not extinguish common law claims that do not fall within its purview.  <u>See</u> <u>Fisher v. Halliburton</u>, 703 F. Supp.2d 639, 648, 649 (S.D. Tex. 2010).

[49]    The statute reads:

(c) Liability as exclusive

The liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this chapter shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into.

asserted claim, district courts do not have jurisdiction, under either the diversity or federal question jurisdiction statute.  <u>See</u> <u>id.</u>  By extension, the court finds that the determination whether Plaintiff's claims fall under the DBA also implicates subject matter jurisdiction.  Other courts agree.  <u>See, e.g.,</u> <u>Watson</u>, 850 F.2d at 224 & n.27 (holding that the court did not have jurisdiction to determine whether the plaintiff was covered by the Longshore Act); <u>Mayo v. Halliburton Co.</u>, Civil Action No. H-10-1951, 2010 WL 4366908, at *2 & n.16 (S.D. Tex. Oct. 26, 2010)(slip copy)(finding that whether DBA barred the plaintiff's claims was an issue of subject matter jurisdiction).

The court may decide a motion to dismiss for lack of jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  <u>Ramming v. United</u> <u>States</u>, 281 F.3d 158, 161 (5th Cir. 2001).  The court, in determining whether it is properly vested with subject matter jurisdiction, is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."  <u>Krim v. pcOrder.com, Inc.</u>, 402 F.3d 489, 494 (5th Cir. 2005)(quoting <u>Montez v. Dep't of Navy</u>, 392 F.3d 147, 149 (5th Cir. 2004)).

The court should decide the Rule 12(b)(1) motion before

addressing any attack on the merits. <u>Ramming</u>, 281 F.3d at 161.  A
dismissal of a complaint pursuant to Rule 12(b)(1) "is not a
determination of the merits and does not prevent the plaintiff from
pursuing a claim in a court that does have proper jurisdiction."
<u>Ramming</u>, 281 F.3d at 161.

### III. Analysis

The DBA, enacted in 1941, extends coverage of the workers'
compensation system of the Longshore Act to employees engaging in
public works outside the United States for companies under federal
government contracts or subcontracts.   42 U.S.C. §§ 1651(a),
1651(b)(1); <u>see also</u> <u>AFIA/CIGNA Worldwide v. Felkner</u>, 930 F.2d
1111, 1112 (5th Cir. 1991); <u>Mayo</u>, 2010 WL 4366908, at *6.
Explicitly incorporating the provisions of the Longshore Act,
except as modified, the DBA provides benefits for "the injury or
death of any [covered] employee."  42 U.S.C. § 1651(a).  Because
the DBA does not define the term "injury," the court looks to the
provisions of the Longshore Act, which state:

> The term "injury" means accidental injury or death
> arising out of and in the course of employment, and such
> occupational disease or infection as arises naturally out
> of such employment or as naturally or unavoidably results
> from such accidental injury . . . .[50]

33 U.S.C. § 902(2); <u>see also</u> 42 U.S.C. § 1651(a).

---

[50]    The remainder of the definition states that it includes "an injury
caused by the willful act of a third person directed against an employee because
of his employment."  33 U.S.C. § 902(2).  Plaintiff here does not allege that
Defendant Elias assaulted her *because of her employment*; therefore, that portion
of the definition is not at issue in this case.

The parties' dispute centers, not on whether Plaintiff was a covered employee, but on whether her injury was subject to the DBA exclusive compensation scheme.  Two parts of the definition of "injury" are pertinent here.  The first is that the injury must have "aris[en] out of and in the course of employment."  33 U.S.C. § 902(2).

A decade after the passage of the DBA, the United States Supreme Court ("Court") held that the Longshore Act's definition of injury (i.e., "accidental injury or death arising out of and in the course of employment") did not require "a causal relation between the nature of employment of the injured person and the accident." O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 506-07 (1951).  The Court continued, "Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the obligations or conditions of employment create the zone of special danger out of which the injury arose." Id. at 507 (internal quotation marks omitted).  The Court found that the death of an employee who ventured out from the employer's recreation area into dangerous waters to attempt the rescue of an unknown man was not excluded from coverage of the Longshore Act simply because the employee was not working at the time. See id. at 505, 507.

Over a decade after the O'Leary opinion, the Fifth Circuit reaffirmed "the principle that employment in such places as Grand

Turk Island creates a zone of special danger linking the injury with the place of employment." O'Keeffe v. Pan Am. World Airways, Inc., 338 F.2d 319, 325 (5th Cir. 1964).  The Fifth Circuit held that, in such locales, even "the individual's recreation is in the service of his employer no less than in his own interest."  Id.

In their motion to dismiss, Defendant Employers contend that the injury occurred in the course of Plaintiff's employment. Although Plaintiff does not concede that point,[51] she does not explain why the court should find that it was not in the course of her employment.

The court finds that, under the broad interpretation given the Longshore Act's language "arising out of and in the course of employment," no question exists that Plaintiff's injury occurred within the course of her employment.  Unlike the plaintiffs in O'Leary and O'Keeffe who were on recreation time, Plaintiff actually was on duty, albeit in a break room, when she was assaulted.  Her injuries are therefore even more connected to her employment than those in O'Leary and O'Keeffe.  Plaintiff's post in Afghanistan certainly qualifies as a location that "creates a zone of special danger," thus linking her injuries with her employment. See O'Keeffe, 338 F.2d at 325.

The second aspect of the definition that is significant to

---

[51]     In a footnote, Plaintiff states, "Plaintiff's claim in this lawsuit, however, relate[s] to an intentional injury that neither party viewed as an on-the-job injury compensable under the DBA."  Doc. 49, Pl.'s Resp., p. 9 n.2.

Plaintiff's injury is that the DBA covers only accidental injuries. "Accidental" is left undefined by either statute, and that omission has spurred a significant amount of litigation. Courts have taken two divergent analytical approaches to determining whether an injury was accidental.

The longer standing of the two approaches is claim centered and simple. Only if an employer's intentional acts are imbued with specific intent to injure the employee do they fall outside the scope of the Longshore Act. <u>Childers v. United States</u>, 12 F.3d 209, *1 (5th Cir. 1993)(unpublished)(citing <u>Sample v. Johnson</u>, 771 F.2d 1335 (9th Cir. 1985), and <u>Johnson v. Odeco Oil & Gas</u>, 864 F.2d 40 (5th Cir. 1989)).[52]   In <u>Johnson v. Odeco Oil and Gas</u>, the Fifth Circuit stopped short of recognizing an exception to exclusivity for intentional torts because it was unnecessary to do so on the facts of the case before it. <u>Johnson v. Odeco Oil & Gas</u>, 864 F.2d at 44 & n.1 (listing cases that suggest intentionally inflicted injuries may not be covered by the Longshore Act).

However, other courts have explicitly acknowledged such an exception. <u>See, e.g.</u>, <u>Fisher v. Halliburton ("Fisher I")</u>, 390 F.Supp. 2d 610, 613-14 (S.D. Tex. 2005)(referring to the exception as "very narrow" and applicable only when the employer "acted with the specific intent to injure the employee"); <u>Roy v. Bethlehem</u>

---

[52]   The actual language of the case as it appears on Westlaw literally states the opposite, but, based on the cases cited and the surrounding text, that appears to be a typographical error.

Steel Corp., 838 F.Supp 312, 316 (E.D. Tex. 1993)(collecting cases that recognized a specific-intent requirement); Johnson v. Odeco Oil & Gas Co., 679 F.Supp. 604, 606-07 (E.D. La. 1987), aff'd, Johnson v. Odeco Oil & Gas, 864 F.2d at 40 (collecting cases of intentional employer misconduct that fits within the DBA or the Longshore Act); Houston v. Bechtel Assocs. Prof'l Corp., 522 F. Supp. 1094, 1096 (D.D.C. 1981)(stating that "[n]othing short of a specific intent to injure the employee falls outside the scope" of the Longshore Act). Under this line of reasoning, "willful, wanton and reckless misconduct" is not enough to remove a claim from DBA coverage. Johnson, 679 F.Supp. at 607; see also Roy, 838 F.Supp. at 316; Houston, 522 F. Supp. 1096.

Decisions of the BRB are in accord with this line of reasoning. See, e.g., Irby v. Blackwater Sec. Consulting, BRB No. 09-0548, 2010 WL 1849314, at *12 (DOL Ben. Rev. Bd. Apr. 14, 2010)("Case precedent holds, however, that the [DBA] is not the employee's exclusive remedy if the injury or death was due to the intent of the employer to injure the employee, because . . . the injury was not 'accidental.'"). Further acknowledging case law that an employer's "wanton and reckless misconduct" does not reach the required level of intent, the BRB noted that it found no reported cases under the DBA or the Longshore Act where the employer's conduct nullified the exclusivity provision. Id. at *13.

16

The more recent and more enterprising approach was first launched in Fisher v. Halliburton ("Fisher II"), 703 F. Supp.2d 639 (S.D. Tex. 2010).[53]  This approach focuses on the nature of the injury.  See Fisher II, 703 F. Supp.2d at 657.  After a thorough academic analysis, the Fisher II court concluded that, in order for the injury to be accidental and thus within the DBA, it must be both undesired and unexpected.  Id. at 645-53.  The court further explained, "[A]n injury is not an 'accident,' and thus, not compensable if a reasonable person would have had some grounds or reasons for believing that the event was likely to occur.  Mere anticipation or uncertain apprehension will not suffice."  Id. at 647.  In order to avoid DBA exclusivity, the court said, a plaintiff "must show that the actual event giving rise to [her] claims was specifically expected."  Id. at 658.  Following the plain language of the statute, the court deviated from the trend of finding an intentional tort exception to the exclusivity of the DBA.  See id. at 653, 657 (finding that neither the Longshore Act or the DBA includes an intentional tort exception).

Regardless of the preferred formulation, Defendant Employers

---

[53]    Fisher II ruled on summary judgment motions in the same case as the Fisher I opinion, which addressed a motion to dismiss.  In the earlier opinion, the court (Atlas, J.) relied on the specific intent exception to DBA exclusivity with limited discussion, and the later decision (Miller, J.) presented a lengthy analysis resulting in the conclusion that no intentional tort exception exists.  Compare id. at 613-14 with Fisher II, 703 F. Supp.2d at 653, 657.

The Fisher II decision is currently on appeal to the Fifth Circuit for consideration of two issues related to the present case: 1) whether the DBA covers only accidents and how that term should be defined; and 2) whether an intentional tort exception applies and, if so, its parameters.  See Fisher II, 703 F.Supp. 2d at 665.

contend, Plaintiff's injury does not fall outside of DBA coverage. In response, Plaintiff does not argue that Defendant Employers either specifically intended that Defendant Elias harm Plaintiff or that they desired and expected that he do so.   In fact, her allegations of their responsibility for the assault are only that they: 1) were "negligent in their actions;" 2) "failed to provide proper training, adequate safety precautions, and proper recruitment, training and placement of personnel;" and 3) "owed a non-delegable duty to keep Plaintiff safe."[54]   She alleged no facts to support that Defendant Employers had any foreknowledge of the assault or any reason to believe that it might occur.

Instead of alleging facts that would suggest her injury was not accidental as it relates to Defendant Employers, Plaintiff asserts that Defendant Elias's actions were desired and expected from his perspective and can be imputed to Defendant Employers.   In her complaint, Plaintiff listed a string of theories by which liability may be imputed,[55] but offered no facts tethering those theories to the events alleged.   Plaintiff only alleged that Defendant Elias was employed by Defendant Employers.[56]

---

[54]     Doc. 1, Pl.'s Compl., p. 8.

[55]     Plaintiff alleged that Defendant Employers were responsible for Defendant Elias's conduct "under the theory of actual agency, apparent agency, ostensible agency, and agency by estoppel" or, alternatively, as joint ventures, joint enterprises and/or under theories of direct corporate liability and/or respondeat superior.   Id. at p. 9.

[56]     See id.

Her response to the pending motion offers nothing more. She argues only that Defendant Elias was an agent of Defendant Employers when he sexually assaulted Plaintiff. By definition under Texas law, she contends, the commission of an assault necessarily means the perpetrator both desired to cause harm and expected injury as the outcome. The question, then, is whether Defendant Elias's intent, desire, and expectation suffices to remove from DBA coverage Plaintiff's claim against Defendant Employers.

To address this question, the court returns to the general purposes of the DBA. The DBA was created "to provide uniformity and certainty in availability of compensation for injured employees on military bases outside the United States." <u>Davila-Perez v. Lockheed Martin Corp.</u>, 202 F.3d 464, 468 (1st Cir. 2000)(citing <u>O'Keeffe</u>, 338 F.2d at 322). As with other workers' compensation exclusive schemes, the coverage includes trade-offs: the workers get prompt medical care and benefits for work-related injuries regardless of fault and the employers avoid litigation and potentially higher tort liability. <u>See Ceres Gulf</u>, 957 F.2d at 1207-08 (quoting <u>Fed. Marine Terminals, Inc. v. Burnside Shipping Co.</u>, 394 U.S. 404, 413 (1969), and stating that the exclusivity of the Longshore Act counterbalances the imposition of absolute liability); <u>Nauert v. Ace Props. & Cas. Ins. Co.</u>, No. 104CV02547WYDBNB, 2005 WL 2085544, at *3 (D. Colo. Aug. 27,

2005)(unpublished)(discussing the give and take of the Longshore Act). Because of the quid pro quo nature of the DBA, it is concerned only with the relationship between employee and employer, not between employee and third parties. See Ceres Gulf, 957 F.2d at 1207-08 (quoting Fed. Marine Terminals, Inc., 394 U.S. at 413).

The DBA obligates the employer to compensate a worker for accidental injuries without determination of fault and, in exchange, provides the worker's exclusive remedy against the employer. Consistent with that purpose, an employee must demonstrate that her claims against *the employer* fall outside the DBA in order maintain a separate tort action against the employer. In other words, Plaintiff must show that her injury was accidental from the perspective of Defendant Employers. Whether Defendant Elias had a specific intent to injure Plaintiff (under older formulations) or desired and/or expected Plaintiff's injury (under Fisher II) is irrelevant unless Defendant Elias's liability is attributable to Defendant Employers.

Plaintiff neither pled nor argued any fact suggesting that Defendant Elias acted on behalf of Defendant Employers or that he was carrying out Defendant Employers' wishes or intentions.[57] She

---

[57]    Plaintiff argues that she is entitled to discovery on this issue. Although a party is entitled to some discovery related to the court's jurisdictional decision, she is not entitled to a fishing expedition. Nothing in Plaintiff's complaint even remotely suggests that she has any reason to believe that Defendant Employers could have expected that she would be injured, much less that they desired or intended it. Unless Plaintiff can articulate a factual basis supporting "more than a sheer possibility," Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009), that Defendant Employers acted unlawfully, the court finds no reason to allow additional discovery in advance

did not allege that he was performing assigned duties or that Defendant Employers in any form or fashion authorized the assault.

As evidence that they had no reason to expect that Defendant Elias would assault Plaintiff, Defendant Employers produced evidence that Defendant Elias cleared a background check prior to employment and that he was issued and acknowledged receipt of a Code of Business Conduct prohibiting assaults against coworkers.[58] Even absent those steps, Defendant Employers could be found to have been at most grossly negligent, a level of responsibility that falls within the DBA under either the specific intent exception to exclusivity or the Fisher II articulation of claims that fall outside the scope of the DBA.  See Fisher II, 703 F. Supp.2d at 658 (ruling out a "generalized apprehension or anticipation" of injury as sufficient to avoid application of the DBA and requiring that the "actual event giving rise" to the claim be "specifically

---

of ruling on the motion to dismiss for lack of subject matter jurisdiction.
   Plaintiff also urges the court to allow further discovery on: 1) whether Plaintiff's injury arose out of and was in the course of her employment; 2) whether Plaintiff was assaulted by Defendant Elias; 3) whether Defendant Employers timely filed a DBA claim; and 4) whether Plaintiff was employed by an employer providing services for the federal government.  Discovery on these issues is unnecessary.  As for the first and fourth topics, Plaintiff presents no argument to the contrary.  In fact, she concedes the fourth in a footnote indicating that she has received DBA benefits for a separate injury.  See Doc. 49, Pl.'s Resp., p. 9 n.2.  As for the second topic, the court takes as true Plaintiff's allegation that she was sexually assaulted by Defendant Elias.  The third topic is irrelevant to the court's determination of subject matter jurisdiction.

   [58]   See Doc. 56, Ex. 1 to Def. Employers' Partial Mot. to Dismiss, Decl. of Janet Curfman, ¶¶ 5, 6; Doc. 56-2, Ex. 1-C to Def. Employers' Partial Mot. to Dismiss, Search Results; Doc. 56-2, Ex. 1-D to Def. Employers' Partial Mot. to Dismiss, Code of Business Conduct, p. 44; Doc. 56-3, Ex. 1-E to Def. Employers' Partial Mot. to Dismiss, Acknowledgment Form.

expected"); <u>Houston</u>, 522 F. Supp. at 1096 (citing the "overwhelming weight of authority" as holding that "gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct short of genuine intentional injury" falls within the scope of the Longshore Act).

Plaintiff's burden of pleading requires that she provide some factual basis for her assertion that Defendant Elias's conduct should be imputed to Defendant Employers. <u>See</u> <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). In her response, Plaintiff cites <u>Jones v. Halliburton Co.</u>, 583 F.3d 228, 239 (5th Cir. 2009), in support of the proposition that an intentional tort by an employee can be imputed to the employer to avoid the DBA. The quote she relies on is, "Needless to say, an 'accident' is not at issue here." <u>Id.</u> In context, the statement has nothing to do with imputing liability to an employer. <u>See</u> <u>id.</u> The court actually was discussing whether a violent sexual attack on an employee in her room could be considered to be in the scope of the *injured individual's* employment as it related to the interpretation of an arbitration provision. <u>See</u> <u>id.</u> The court was not interpreting the Longshore Act or any other statute. <u>See</u> <u>id.</u> at 239-40.

In another part of the opinion, the court made a more relevant observation, "[I]n most circumstances, a sexual assault is independent of an employment relationship." <u>Id.</u> at 236 (referring

22

to the perpetrator's employment); <u>see also</u> <u>Jones v. Halliburton Co.</u>, 625 F. Supp.2d 339, 352 n.11 (S.D. Tex. 2008)(recognizing "that to prevail on a vicarious liability claim, [the plaintiff] will have to show that the alleged rapists were acting in the scope of their employment"); <u>Tex. & Pac. Ry. Co. v. Hagenloh</u>, 247 S.W.2d 236, 239, 241 (1952)(stating that "[i]t is not ordinarily within the scope of a servant's authority to commit an assault on a third person . . . . Usually assault is the expression of personal animosity and is not for the purpose of carrying out the master's business"); <u>Kelly v. Stone</u>, 898 S.W.2d 924, 927 (Tex. App.–Eastland 1995, writ denied)(same).

In a discussion of vicarious liability under the Texas Workers' Compensation Act[59] ("TWCA"), a sister court quoted the language of <u>Tex. & Pac. Ry. Co.</u> and <u>Kelly</u> and noted a lack of evidence that the third-party offender in that case was in a supervisory role over the plaintiff or that she slapped Plaintiff in furtherance of her employment position or "for the accomplishment of the object for which she was hired." <u>Hernandez v. Office Depot, Inc.</u>, No. Civ.A. H-04-2630, 2005 WL 2095102, at *5 (S.D. Tex. Aug. 30, 2005)(unpublished).  The plaintiff had argued that the coworker's assault was conduct falling within the intentional tort exception to the exclusive remedy provision of the TWCA.  <u>See</u> <u>id.</u>  In rejecting the argument, the court quoted the

---

[59]     Tex. Labor Code §§ 401.001-506.002.

Texas Supreme Court:

> It would disturb the balance the Workers' Compensation Act achieved if we allowed an employee, injured by the intentional tort of a co-employee, to sue and recover from their employer simply because the tort was committed (1) at work (2) by an employee of the company."

Id. at *6 (quoting Urdiales v. Concord Techs. Del., Inc. 120 S.W.3d 400, 407 (Tex. App.–Houston [14th Dist.] 2003, pet. denied)).

In 1985 opinion, the United States Court of Appeals for the District of Columbia touched on the issue in applying the exclusive liability provision of the Longshore Act.  See Rustin v. Dist. of Columbia, 491 A.2d 496, 501 (D.C. Cir. 1985).  An employee of a private security firm shot and killed a coworker while the two were on duty.  See id. at 498.  The estate of the decedent sought to impute liability to the employer to avoid coverage of the Longshore Act.  See id. at 501.  The plaintiff's position was that the corporate officials conspired to kill the decedent because he had discovered the existence of a narcotics ring amid the corporate hierarchy.  See id. at 501-02.  In reviewing summary judgment in favor of the employer, the court stated that a person's actions were that of the employer if the person was "realistically the alter ego of the corporation and not merely a foreman, supervisor or manager."  Id. at 501 (quoting 2A A. Larson, The Law of Workmen's Compensation § 68.20, at 13-10).  The court found no evidence that the employer participated in the killing.  See Rustin, 491 A.2d at 502.

24

While all of these cases are not perfectly analogous, legally and factually, to the case at hand, the gist is that imputing liability to an employer for an employee's intentional acts requires more than mere agency. Plaintiff cited no case, and the court found none, that ruled contrary to the above opinions with regard to any workers' compensation act. Under workers' compensation schemes, "course of employment" with regard to the injured employee may cut a broad swath, but employer liability for its bad-acting employees is not so all encompassing.

Plaintiff further contends that Defendant Employers ratified Defendant Elias's conduct. Based on facts asserted only in her responsive brief, Plaintiff contends that Defendant Employers ratified the assault by sending her to a medical provider who "failed to examine or treat her in a meaningful way," by doing nothing "to ensure her that she was treated or safe," and by not removing her attacker from her work area.[60] In support of the legal assertion that "an employer may be vicariously liable for the intentional tort of its employee under the doctrine of respondeat superior or directly liable under the theory of ratification," Plaintiff cites a case addressing a principal's ratification of an agent's signature on a contract.[61] Plaintiff fails to convince the court that there is any connection between the two circumstances.

---

[60]    Doc. 49, Pl.'s Resp. p. 14.

[61]    Id. at p. 14 (citing Little v. Clark, 592 S.W.2d 61, 64 (Tex. Civ. App.–Ft. Worth 1979, writ ref'd n.r.e.).

Plaintiff not only failed to allege in her complaint that she received inadequate medical care or that Defendant Elias remained in her work area after the attack, she now fails to supply legal authority indicating that such actions amount to ratification of an employee's violent act.   Even assuming ratification, Plaintiff fails legally to support the leap from ratification to imputed intent or desire and expectation for purposes of avoiding DBA coverage.

Finally, Plaintiff argues that Defendant Employers should be estopped from claiming preemption by the DBA because they failed to follow the Department of Labor procedures for filing claims.  She contends that Defendant Employers filed her complaint late and it was denied.  Plaintiff insists that she will have no remedy for her assault injuries if not allowed to pursue the tort claims in this court.

Frankly, the court does not understand Plaintiff's argument. She fails to discuss the legal requirements for such equitable relief.   More importantly, though, she ignores the applicable administrative procedures.   Among other rights, the statutory framework allows for tolling of the limitation period when a claimant is denied recovery in a lawsuit on the basis that the claim fits within the Longshore Act and allows for appealing an

unfavorable benefits ruling.[62]   See 33 U.S.C. § 913(d); 42 U.S.C. § 1653(b).   Therefore, Plaintiff has remedies, but they are not available from this court.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant Employers' motion be **GRANTED** as to Plaintiff's assault and battery, sexual assault, and IIED claims.   Additionally, the court **RECOMMENDS** that the claims of negligence and negligent hiring, supervision, training, and retaining, which were abandoned by Plaintiff, be **DISMISSED**.   In accordance with Plaintiff's request, the court **RECOMMENDS** that Plaintiff's claim of agency, joint venture, joint enterprise, and direct corporate liability be **DISMISSED** as a cause of action but retained as a theory of liability.

The only remaining cause of action is Plaintiff's Title VII claim.   The court has indicated that it will entertain another round of briefing regarding whether the Title VII claim also falls within DBA coverage.   Should Defendant Employers wish to pursue

---

[62]   The court is not suggesting that her DBA claim has been denied. Plaintiff argues that the Notice of Controversion of Right to Compensation represents a denial of her DBA claim.   Based on the form itself and the Code of Federal Regulations, she appears to be incorrect.   The notice of controversion is the employer or carrier's objection to the employee's right to compensation, not the U.S. Department of Labor's ruling.   See Doc. 49-1, Ex. A to Pl.'s Resp., Notice of Controversion of Right to Compensation ("Instructions: This form may be used by the employer/carrier to controvert the right to compensation.").   In fact, it begins, not ends, the administrative process.   20 C.F.R. § 702.252 ("Upon receiving the employer's notice of controversion, the district director shall forthwith commence proceedings for the adjudication of the claim . . . .").

dismissal on that basis, they are **ORDERED** to file their motion within twenty-one days of the date this order is adopted.   If unable to make a legitimate argument that the Title VII claim is subject to the DBA exclusivity provision, Defendant Employers should not embark on the endeavor.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.   Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 20th day of May, 2011.

Nancy K. Johnson
United States Magistrate Judge

28